**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MONTY CLAY, et al.,

      Plaintiffs,

v.                                   Case No:  6:14-cv-235-Orl-40GJK

AIG AEROSPACE INSURANCE
SERVICES, INC., et al.,

      Defendants/Third Party Plaintiff,

v.

CARROLL AVIATION, INC.,

      Third Party Defendant.

_____

## ORDER

This cause comes before the Court on the following:

1. Defendant AIG Aerospace Insurance Services, Inc. F/K/A Chartis Aerospace Insurance Services, Inc.'s Partially Unopposed Motion to Stay on Grounds of Abstention (Doc. 42), filed May 27, 2014;

2. Response to Defendant AIG Aerospace Insurance Services, Inc.'s Motion to Stay on Grounds of Abstention (Doc. 59), filed June 10, 2014;

3. Defendants Air-Tec, Inc.'s and Williamson Aircraft, Inc.'s Motion to Dismiss or, in the Alternative, to Stay Proceedings; and to Stay Discovery (Doc. 53), filed June 6, 2014;

4. Plaintiffs' Response to Defendants' Motion to Dismiss or, in the Alternative, Motion to Stay Proceedings and Stay Discovery Pending Resolution of Said Motion (Doc. 62), filed June 20, 2014;

5.   Defendants, Marilyn Ruhe, Bob Ruhe AG Service, Inc. and Ruhe Sales, Inc.'s Motion to Dismiss Complaint for Lack of Personal Jurisdiction and to Quash Service of Process with Memorandum of Law in Support (Doc. 57), filed June 9, 2014;

6.   Defendant, Eric Ruhe's Motion to Dismiss Complaint for Lack of Personal Jurisdiction and to Quash Service of Process with Memorandum of Law in Support (Doc. 60), filed June 16, 2014;

7.   Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, Motion to Sever and Transfer Venue (Doc. 63), filed June 23, 2014; and

8.   Defendants' Reply to Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, Motion to Sever and Transfer Venue (Doc. 70), filed July 21, 2014.

## I.   BACKGROUND

### A.   Facts[1]

This lawsuit arises out of a tragic airplane crash that resulted in the deaths of both the pilot, Dale Leighroy Phillips, Jr. ("Phillips"), and his passenger, Amy Clay (together, the "Decedents").  On February 20, 2012, the Decedents embarked on a Piper PA-24-250 aircraft (the "subject aircraft") from Abilene, Texas to Norman, Oklahoma.  (Doc. 20, ¶ 18).  The Decedents never reached Oklahoma, as a vacuum pump within the subject

---

1.  This account of the facts is taken from Plaintiffs' First Amended Complaint (Doc. 20), the allegations of which the Court must accept as true to the extent Defendants Air-Tec, Inc. and Williamson Aircraft, Inc. move to dismiss for failure to join indispensable parties pursuant to Federal Rule of Civil Procedure 12(b)(7).  *United States v. Angulo*, No. 8:12-cv-1379-JSM-EAJ, 2012 WL 6009338, at *1 (M.D. Fla. Dec. 3, 2012).

aircraft's engine failed in flight, causing the subject aircraft to crash shortly after takeoff. (*Id.* ¶ 19).

Plaintiffs contend that Defendants are, in their own respective ways, responsible for the crash.  Plaintiffs assert that the vacuum pump was originally installed on another aircraft located in Corpus Cristi, Texas near late 1999 or early 2000.  (*Id.* ¶ 20(a)).  In 2003, that aircraft was sold to J.A.G. Components, Inc. ("J.A.G.")[2] in Coral Springs, Florida where it was operated for approximately two years.  (*Id.* ¶ 20(b)).  In October 2005, this aircraft was destroyed when Hurricane Wilma struck Florida.  (*Id.* ¶ 20(c)).  J.A.G.'s insurance company declared the aircraft a total loss.  (*Id.* ¶ 20(d)).  On an unspecified date, Defendant AIG Aerospace Insurance Services, Inc. ("AIG") and Defendant Chartis Aerospace Insurance Services, Inc. ("Chartis") took possession of the destroyed aircraft. (*Id.* ¶ 20(e)).  AIG and Chartis then placed this aircraft, including its engine and vacuum pump, up for auction on the Internet.  (*Id.* ¶ 20(f)).  Although AIG and Chartis advertised the aircraft as having been severely damaged in a hurricane, Plaintiffs allege that AIG and Chartis failed to record any damage to the engine or vacuum pump in the aircraft's engine logs or make efforts to warn others that the engine and vacuum pump were damaged.  (*Id.*).

In December 2005, Plaintiffs assert that Defendant Ruhe Sales, Inc. ("Ruhe Sales"), Defendant Bob Ruhe AG Service, Inc. ("Ruhe AG"), Defendant Marilyn Ruhe,[3] and Defendant Eric Ruhe (all collectively, the "Ruhe Defendants"), acting separately or in concert, purchased the destroyed aircraft from AIG and Chartis, including the damaged

---

2. J.A.G. Components, Inc. is not a party to the instant lawsuit.
3. On June 30, 2014, Plaintiffs voluntarily dismissed Defendant Marilyn Ruhe from this lawsuit without prejudice.  (Doc. 66).

engine and vacuum pump. (*Id.* ¶ 20(g)). Eric Ruhe and Robert Ruhe, a non-party to this lawsuit, traveled to Coral Springs, Florida to transport the destroyed aircraft to Ohio. (*Id.*). According to Plaintiffs, after arriving in Ohio, the engine and vacuum pump were removed from the destroyed aircraft and placed in a box on the premises of the Ruhe Defendants. (*Id.* ¶ 20(h)).

In September 2011, the Ruhe Defendants sold and shipped the engine and vacuum pump to Defendant Air-Tec, Inc. ("Air-Tec") in Orlando, Florida. (*Id.* ¶ 20(i)). Plaintiffs allege that, although the Ruhe Defendants knew that the engine and vacuum pump were severely damaged by a hurricane, none of them recorded the damage in the aircraft's engine logs or made efforts to warn others that the engine and vacuum pump were damaged. (*Id.*). Thereafter, Air-Tec sold and transported the engine and vacuum pump to Defendant Williamson Aircraft, Inc. ("Williamson") in Mims, Florida. (*Id.* ¶ 20(j)). Plaintiffs allege that Williamson knew or should have known that the engine and vacuum pump were damaged, but failed to record any damage to the engine or vacuum pump in the aircraft's engine logs or make efforts to warn others that the engine and vacuum pump were damaged. (*Id.*).

In October 2011, Williamson sold and shipped the engine and vacuum pump to Phillips in Abilene, Texas. (*Id.* ¶ 20(k)). Phillips then installed the engine and vacuum pump on the subject aircraft without knowledge that both were damaged. (*Id.*). After installation, the engine and vacuum pump operated for approximately 2.9 hours before failing, dooming the ill-fated aircraft. (*Id.* ¶ 20(m)).

## B. Procedural History

On April 17, 2013, Plaintiffs initiated legal action based on these events in the

district court of the 402nd judicial district in Wood County, Texas, case number 2013-215. (Doc. 42-1).  In that case, Plaintiffs sued AIG, Chartis, Williamson, Air-Tec, and other defendants who are non-parties to this action.  (*Id.*).  According to the Clerk of Court for Wood County, Texas, case number 2013-215 is currently set for jury trial, which is scheduled to begin on January 20, 2015.

Plaintiffs initiated the instant lawsuit on February 11, 2014 by filing their Complaint. (Doc. 1).  On March 17, 2014, Plaintiffs filed the Amended Complaint, which remains the operative pleading in this matter.  (Doc. 20).  In their Amended Complaint, Plaintiffs state three claims for relief.  Count 1 states a claim for negligence against AIG, Chartis, Williamson, Air-Tec, and the Ruhe Defendants.  (*See id.* ¶¶ 22–26).  Count 2 states a claim for strict liability against AIG, Williamson, Air-Tec, and the Ruhe Defendants.  (*See id.* ¶¶ 27–29).  Count 3 states a claim for breach of warranty against AIG, Williamson, Air-Tec, and the Ruhe Defendants.  (*See id.* ¶¶ 30–33).

Collectively, the Defendants have filed four motions that are the subject of this Order.  First, AIG moves to stay these proceedings on grounds of abstention until the Texas state court lawsuit is resolved, as both lawsuits involve the same parties and substantially the same claims for relief. (Doc. 42). Second, Air-Tec and Williamson move to dismiss the Amended Complaint for failing to join indispensable parties.  (Doc. 53).  In the alternative, Air-Tec and Williamson join AIG in moving to stay the proceedings on grounds of abstention.  (*Id.*).  Third, Ruhe AG and Ruhe Sales move to dismiss the Amended Complaint for lack of personal jurisdiction over them.  (Doc. 57).  Finally, Eric Ruhe also moves to dismiss for lack of personal jurisdiction over him.  (Doc. 60).  Pursuant to a prior Court Order, discovery is currently stayed in this action until the Court resolves

these four motions.  (Doc. 64).

## II.    DISCUSSION

### A.    Defendants' Motions to Dismiss or Stay on Grounds of Abstention

AIG, Air-Tec, and Williamson move to dismiss the Amended Complaint or, in the alternative, to stay the action until resolution of the pending Texas state court case. (Docs. 42, 53).  These defendants request dismissal or stay on grounds of abstention as stated in the *Colorado River* doctrine.  (Docs. 42, 53).

Abstention is a judicially-created doctrine by which a federal court will decline to consider a matter under specific circumstances.  Today, there arguably exist four realms of abstention, only one of which is relevant to the instant case: abstention to avoid duplicative litigation.  Formed by the United States Supreme Court in *Colorado River Water Conservation District v. United States* and sculpted by its progeny, this type of abstention arose out of increasingly congested federal dockets and permits a federal court to decline or stay consideration of a case where a pending state court action arises out of the same controversy.  424 U.S. 800, 818–19 (1976).  As such, abstaining from the federal case until the state case concludes forwards the principles of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."  *Id.* at 817 (internal quotation marks omitted).

Although it is axiomatic that federal courts are courts of limited jurisdiction, it is equally axiomatic that abstaining from a cause is "the exception, not the rule."  *Id.* at 813. To that end, Chief Justice John Marshall sagely described our duty to hear cases permitted to be heard:

> It is most true that this Court will not take jurisdiction if it should not: but it is equally true, that it must take jurisdiction if it

> should.  The judiciary cannot, as the legislature may, avoid a measure because it approaches the confines of the constitution.  We cannot pass it by because it is doubtful.  With whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if it be brought before us.  We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.  The one or the other would be treason to the constitution.  Questions may occur which we would gladly avoid, but we cannot avoid them.  All we can do is, to exercise our best judgment, and conscientiously to perform our duty.

*Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821).

The Supreme Court in *Colorado River* nevertheless recognized that narrow circumstances exist where a federal court may properly abstain from a cause pending resolution of its state counterpart.  *Colorado River*, 424 U.S. at 818.  In determining whether a federal court should abstain, a district court may "consider such factors as the inconvenience of the federal forum, the desirability of avoiding piecemeal litigation, and the order in which jurisdiction was obtained by the concurrent forums."  *Id.* (citations omitted).  Other factors considered by federal courts when addressing this type of abstention include whether a court has assumed jurisdiction over property at issue in the case, whether federal or state law will be applied, whether the state forum can adequately protect the parties' rights, and whether the federal lawsuit is merely a reaction to the state lawsuit.  *Rambaran v. Park Square Enters., Inc.*, No. 6:08-cv-247-Orl-19GJK, 2008 WL 4371356, at *2–3 (M.D. Fla. Sept. 22, 2008).  No one factor is determinative, or even necessary; a court may consider any factor it deems relevant to answering the abstention question.  *See Colorado River*, 424 U.S. at 818–19.  However, the inquiry is "heavily weighted in favor of the exercise of jurisdiction," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983), and "[o]nly the clearest of justifications will warrant [abstention]."  *Colorado River*, 424 U.S. at 819.

Here, AIG maintains that the *Colorado River* factors weigh in favor of abstention. First, AIG asserts that this Court is immensely inconvenient when compared to forums available in Texas.  (Doc. 42, p. 9).  All but one of the Plaintiffs reside in Texas, Plaintiffs originally filed suit in Texas, the subject aircraft's crash occurred in Texas, and a number of important witnesses and evidence are located in Texas.  (*Id.*).  Second, AIG contends that abstention would avoid the potential for piecemeal litigation and this Court's unnecessary duplication of the Texas state court's efforts.  (*Id.* at pp. 10–11).  Third, AIG notes that the Texas state forum obtained jurisdiction almost one year before this Court and, as a consequence, has achieved significant progress toward resolution of the parties' dispute.  (*Id.* at pp. 12–15).  Specifically, AIG informs the Court that trial is on the horizon and would likely result in an adjudication of the merits on those claims.  (*Id.* at p. 15). Fourth, AIG states that all of Plaintiffs' claims for relief involve matters of Texas state law. (*Id.*).  Finally, AIG holds that including it and the other Texas state court defendants in this suit is reactive and unnecessary, forcing AIG to defend identical lawsuits in multiple forums.  (*Id.* at p. 16).[4]  Although less fully briefed on the *Colorado River* factors, Air-Tec and Williamson essentially echo AIG's sentiments.  (Doc. 53-1, pp. 7–8).

Plaintiffs counter, arguing that the *Colorado River* factors weigh against abstention. Without much elaboration, Plaintiffs contend that this case is not parallel to the Texas state court action, involves different defendants, and would afford different relief to Plaintiffs on different theories of liability.  (Doc. 59, p. 3).

---

4.  As to this factor, AIG states that it believes Plaintiffs brought this lawsuit solely as a result of the Texas court's dismissal of the Ruhe Defendants for lack of personal jurisdiction.  (Doc. 42, p. 16).  As such, AIG clarifies that this lawsuit is duplicative as to itself and the remaining Texas state court defendants only, but not to the Ruhe Defendants.  (*Id.*).

As alluring as abstention is in this case, the Court finds that the *Colorado River* factors weigh against it.  At the outset, and as the parties agree, no court has assumed jurisdiction over property in this matter and both this Court and the Texas state court can adequately protect the interests of all parties involved.  The Court therefore treats these two factors as weighing neither in favor nor against abstention.

Regarding inconvenience of the federal forum, this Court actually seems to be the more convenient forum to the Defendants who request abstention.  AIG is a Georgia corporation that conducts business in Florida and both Air-Tec and Williamson are Florida corporations with principal places of business in Florida.  Although Plaintiffs reside in Texas and Oklahoma and the injuries alleged in this lawsuit accrued in Texas, Plaintiffs have selected this Court to bring their claims; presumably, Plaintiffs do not deem this forum inconvenient.  Moreover, a large part of the conduct allegedly giving rise to Plaintiffs' injuries occurred in Florida and evidence and witnesses regarding that conduct will exist here.  Additionally, it does not appear that Plaintiffs have chosen this forum merely to "vex, harass, or oppress" Defendants, which would warrant dismissal.  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) (internal quotation marks omitted).  As such, this factor weighs heavily against abstention.

The Court agrees with AIG, Air-Tec, and Williamson that some piecemeal litigation will result.  Based on the operative complaint filed in the Texas state court case (*see* Doc. 42-2), Plaintiffs are suing AIG, Air-Tec, and Williamson for the same claims: negligence, strict liability, and breach of warranty.  To that extent, the moving Defendants will surely duplicate efforts in both cases, producing piecemeal litigation.  This factor weighs in favor of abstention.

The Court similarly agrees that substantial progress has been made toward resolution of Plaintiffs' claims in the Texas state court action.  It appears from AIG's submission of the Texas court's docket that significant discovery has been conducted and dispositive motions have been considered.  (Doc. 42-5).  Trial was originally scheduled for October 2014 (Doc. 42, p. 15), but has since been continued to January 20, 2015.  However, the Court is left to wonder the reason for the continuance.  If the parties are intending to conduct significant additional pre-trial discovery or have been granted leave to renew dispositive motions, this factor may weigh against abstention; on the other hand, a one-time continuance to accommodate the parties' schedules would weigh in favor of abstention.  The Court hesitates to speculate on the Texas state court's rationale for the continuance.  Moreover, further continuances in Texas may prejudice Plaintiffs' ability to pursue the instant case and reach a timely resolution.  Thus, if this factor weighs in favor of abstention, it does so only slightly.

Next, AIG misconstrues the factor requiring consideration of whether state law would govern Plaintiffs' claims.  In the current context, it is not important whether Texas or Florida law would apply to this case; without delving into Florida's conflict of laws rules, this Court could properly interpret and apply Texas state law to Plaintiffs' claims.  Rather, the inquiry is whether the issues presented in this case involve complex or novel questions of state law that should be reserved specifically for a state court.  *Am. Bankers Ins. Co. of Fla. v. First State Ins. Co.*, 891 F.2d 882, 886 (11th Cir. 1990).  As Plaintiffs' claims all involve relatively ordinary and uncomplicated state tort and contract questions—negligence, strict liability, and breach of warranty—this factor weighs against abstention.

The Court similarly disagrees with AIG's assertion that the instant suit is merely reactive or vexatious. It may be true that Plaintiffs initiated this action in Florida as a result of the Texas state court's dismissal of the Ruhe Defendants for lack of personal jurisdiction. However, that fact alone does not render this case reactive or vexatious. It is not the case that Plaintiffs have filed this lawsuit after an unfavorable disposition of a claim on its merits or continue to file lawsuit after lawsuit against Defendants in numerous different forums. Plaintiffs have stated what appear on the face of their Amended Complaint to be legitimate claims for relief against Florida residents and other defendants for actions that allegedly occurred in Florida. The Court finds nothing in the record to suggest that Plaintiffs filed this lawsuit for any improper purpose. As such, this factor does not warrant abstention.

As a final consideration, "[t]he pendency of an action in [a] state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Spring Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013) (internal quotation marks omitted). It is well-established that Plaintiffs are entitled to pursue the same claims against the same parties in both federal and state courts until one forum acts to deprive the other of jurisdiction through res judicata. *McClellan v. Carland*, 217 U.S. 268, 282 (1910). As long as this Court has jurisdiction over the matter, it must not skirt the duties conferred to it by the United States Constitution. *See Cohens*, 19 U.S. (6 Wheat.) at 404. Accordingly, after weighing the factors enumerated in *Colorado River* and considering the unique circumstances of this case, the Court declines to abstain pending resolution of the Texas state court action.

**B.     Air-Tec's and Williamson's 12(b)(7) Motion to Dismiss**

Air-Tec and Williamson move to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(7) for failing to join indispensable parties.  (Doc. 53). Air-Tec and Williamson contend that Carroll Aviation, Inc. and certain unnamed mechanics who installed the engine and vacuum pump on the subject aircraft are indispensable parties who Plaintiffs failed to join in this action.  (Doc. 53).

Dismissal under Rule 12(b)(7) is a two-part inquiry.  First, the court must determine whether the absent party is a "required" party according to Rule 19(a).  *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1334 (11th Cir. 2011).  Generally, an absent party is not required simply because its joinder would be convenient to the resolution of the dispute.  *Raimbeault v. Accurate Mach. & Tool, LLC*, No. 14-CIV-20136, 2014 WL 4954237, at *7 (S.D. Fla. Oct. 2, 2014).  Instead, an absent party is required where the court cannot accord complete relief among the existing parties, prejudice would result to the absent party's ability to protect itself in the instant action, or the nonparty's absence would create a substantial risk that the existing parties would incur inconsistent or duplicative obligations.  *Id.*; Fed. R. Civ. P. 19(a).  If the party is required by Rule 19(a), "the court must order that party joined if its joinder is feasible."  *Raimbeault*, 2014 WL 4954237, at *7.  On the other hand, if the absent party is not required, the lawsuit continues.  *Id.*  The party moving to dismiss an action for failure to join an indispensable party bears the burden of demonstrating by evidence that the absent party is "required" according to Rule 19(a).  *Molinos*, 633 F.3d at 1347.

Second, if the absent party is required by Rule 19(a), but the party's joinder is not feasible for some reason—*i.e.*, joinder of the absent party would destroy diversity—then

the court must decide whether, "in equity and good conscience," the action should proceed without the absent party or should be dismissed. Fed. R. Civ. P. 19(b); *Molinos*, 633 F.3d at 1334. In analyzing whether an action should proceed without a required party, the court considers the four factors enumerated by Rule 19(b): (1) the extent to which a judgment might prejudice the absent party or existing parties, (2) the extent to which any prejudice can be lessened by shaping the relief or taking other protective measures, (3) whether a judgment would be adequate despite the required party's absence, and (4) whether the plaintiffs would have another adequate remedy were the action dismissed. *Id.* These four factors are not exclusive; "pragmatic considerations" also play a role in the examination of whether an action should proceed. *Id.*; Fed. R. Civ. P. 19 advisory committee's notes.

Here, Air-Tec and Williamson assert that Carroll Aviation and the unnamed mechanics are required by Rule 19(a) because they may also be liable as joint tortfeasors for Plaintiffs' damages through their negligent installation or maintenance of the engine and vacuum pump. (Doc. 53, p. 2; Doc. 53-1, p. 5). Air-Tec and Williamson emphasize that certain evidence indicates greater potential liability on the part of Carroll Aviation and the unnamed mechanics. (Doc. 53-1, p. 5). As a result, Air-Tec and Williamson conclude that failure to join Carroll Aviation and the unnamed mechanics will render this Court unable to accord complete relief both to Plaintiffs and Defendants. (Doc. 53, p. 2; Doc. 53-1, p. 6).

However, "[i]t has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990). Even in states that have abolished or modified joint and several liability, joint

13

tortfeasors are merely permissive parties. *Int'l Sch. Servs., Inc. v. AAUG Ins. Co.*, No. 10-62115-CIV, 2013 WL 5192265, at *9 (S.D. Fla. July 25, 2012). A defendant who complains of an absent tortfeasor may seek contribution for his share of liability through impleader. *E.g.*, *Timbrook v. Metzeler Auto. Profile Sys. Iowa, Inc.*, 209 F.R.D. 154, 156 (S.D. Iowa 2002) (declining to dismiss complaint where Iowa law allows for contribution among joint tortfeasors); *see also* Fed. R. Civ. P. 14(a).

Indeed, Air-Tec and Williamson filed a third-party complaint against Carroll Aviation on June 10, 2014, seeking contribution based on Carroll Aviation's alleged negligence, fraud, and violation of the Federal Aviation Regulations. (Doc. 58). Presumably, Air-Tec and Williamson could also implead the unnamed mechanics on the same grounds if they so desired. As a result, Carroll Aviation and the unnamed mechanics are not indispensable parties and no further inquiry is required by Rule 19. *Temple*, 498 U.S. at 8; *Raimbeault*, 2014 WL 4954237, at *7. Accordingly, the Amended Complaint will not be dismissed.

### C. The Ruhe Defendants' Motions to Dismiss for Lack of Personal Jurisdiction and Motions to Quash Service of Process.

The Ruhe Defendants move to dismiss and to quash service of process for lack of personal jurisdiction. (Docs. 57, 60). These Defendants contend that they have not invoked the jurisdiction of Florida's long-arm statute and would have their due process rights violated were Florida to exercise personal jurisdiction over them. (*See* Doc. 57, pp. 8–14; Doc. 60, pp. 7–13).

A court must dismiss an action against a defendant over which it lacks personal jurisdiction. *Smith v. Trans-Siberian Orchestra*, 689 F. Supp. 2d 1310, 1312 (M.D. Fla. 2010) (citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999)). On a

motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden to allege sufficient facts to establish that the court has personal jurisdiction over the defendant and to rebut a defendant's assertion that personal jurisdiction over him is improper.  *Id.* at 1313 (citing *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000)).

District courts in the Eleventh Circuit apply a two-prong analysis when determining whether personal jurisdiction exists over a defendant.  *Mutual Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004); *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990).  First, the court must determine whether the plaintiff has alleged sufficient facts to subject the defendant to the forum state's long-arm statute.  *See Future Tech. Today*, 218 F.3d at 1249.[5]  Second, if the court determines that the forum state's long-arm statute has been satisfied, the court must then decide whether exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  *Id.*  In determining whether jurisdiction comports with the Due Process Clause, the court must ask "(1) whether [the] defendant has established sufficient 'minimum contacts' with the [forum state]; and (2) whether the exercise of this jurisdiction over [the] defendant would offend 'traditional notions of fair play and substantial justice.'"  *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The Court begins by analyzing whether Florida's long-arm statute has been satisfied.  *See id.*  Florida's long-arm statute permits jurisdiction over non-residents under

---

5.  In examining this first prong, the district court must construe the state's long-arm statute in the same manner as the state's supreme court.  *See Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1265 (11th Cir. 1998).

two circumstances.  First, a non-resident submits himself to Florida's specific jurisdiction by performing any of the acts enumerated by the long-arm statute.  Fla. Stat. §§ 48.193(1)(a)(1)–(9).  Second, a non-resident submits himself to Florida's general jurisdiction by "engag[ing] in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise . . . whether or not the [plaintiff's] claim arises from that activity."  Fla. Stat. § 48.193(2).  The Court finds that the Ruhe Defendants have neither invoked Florida's specific jurisdiction nor its general jurisdiction.

### 1.  Specific Jurisdiction

Plaintiffs allege that the Ruhe Defendants have submitted themselves to Florida's specific jurisdiction in four ways: (1) operating, engaging in, or carrying on a business venture in Florida, (2) committing a tortious act in Florida, (3) causing injury to persons or property by conducting certain solicitation or service activities within Florida, and (4) breaching a contract by failing to perform acts required to be performed in Florida. (Doc. 20, ¶¶ 16(a)–(d)).

Regardless of which enumerated act through which a plaintiff asserts specific jurisdiction, the complaint must allege a cause of action "arising from" that enumerated act in Florida.  Fla. Stat. § 48.193(1)(a).  It is well-established that the phrase "arising from" requires that the place of injury be within Florida.  *Hollingsworth v. Iwerks Entm't, Inc.*, 947 F. Supp. 473, 478 (M.D. Fla. 1996); *Allerton v. State Dep't of Ins.*, 635 So. 2d 36, 39–40 (Fla. Dist. Ct. App. 1994).

Indeed, the case law cited by Plaintiffs support this principle.  The vast majority of the cases cited by Plaintiffs involve communications into Florida that cause injury in Florida.  For example, in *Achievers Unlimited, Inc. v. Nutri Herb, Inc.*, the non-resident

defendant directed a defamatory communication about a Florida resident to third parties in Florida. 710 So. 2d 716, 718 (Fla. Dist. Ct. App. 1998). The court found that specific jurisdiction was proper under Florida's long-arm statute because the place of the plaintiff's injury was where the defamatory communication was published to the third parties: Florida. *Id.*; *see also OSI Indus., Inc. v. Carter*, 834 So. 2d 362, 367 (Fla. Dist. Ct. App. 2003) (finding specific jurisdiction over non-resident defendant where fraudulent misrepresentation injured Florida resident by causing him to rely to his detriment on the misrepresentation within the state).

The Ruhe Defendants correctly note that Plaintiffs' injuries did not accrue in Florida. (Doc. 70, p. 6). Notwithstanding the fact that the Ruhe Defendants may have committed tortious acts by allegedly making false representations to Air-Tec regarding the airworthiness of the engine and vacuum pump, Plaintiffs did not incur their injuries until the fatal plane crash on February 20, 2012. Because that plane crash occurred in Texas and not Florida, this Court cannot exercise Florida's specific jurisdiction over the Ruhe Defendants for any of the long-arm statute's enumerated acts.

### 2. General Jurisdiction

Plaintiffs also allege in their Amended Complaint that the Ruhe Defendants have submitted themselves to Florida's general jurisdiction by engaging in "substantial and not isolated activity" within the state. (Doc. 20, ¶ 17.). However, Plaintiffs do not brief the Court on this subject in their response to the Ruhe Defendants' motions to dismiss. (*See* Doc. 63). Regardless, the Court takes this opportunity to discuss why the Ruhe Defendants have not submitted themselves to Florida's general jurisdiction.

Unlike specific jurisdiction, Florida's general jurisdiction does not require the

performance or occurrence of any particular act. Instead, Florida courts construe "substantial and not isolated activity" to mean "continuous and systematic business contact" with the state. *Autonation, Inc. v. Whitlock*, 276 F. Supp. 2d 1258, 1262 (S.D. Fla. 2003) (quoting *Woods v. Nova Cos. Belize Ltd.*, 739 So. 2d 617, 620 (Fla. Dist. Ct. App. 1999)) (internal quotation marks omitted). This standard is the same standard pronounced by the United States Supreme Court in its analysis of sufficient minimum contacts. *Woods*, 739 So. 2d at 620. Therefore, a non-resident will submit himself to Florida's general jurisdiction where he "purposely avails [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985) (internal quotation marks omitted). However, a non-resident does not purposefully direct his activities to Florida or purposely avail himself of Florida's general jurisdiction where his contacts are "random," "fortuitous," or "attenuated." *Id.* at 475 (quoting *Keeton*, 465 U.S. 770, 774 (1984) and *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299 (1980)). Likewise, the "unilateral activity of another party" will also not suffice to establish that a non-resident directed his activities to the residents of the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984).

The Ruhe Defendants' activity within Florida is limited. According to sworn affidavits attached to their motions to dismiss, Ruhe AG and Ruhe Sales are both Ohio corporations with their principal places of business in Ohio and Eric Ruhe is a California resident. (Doc. 57, Ex. A, ¶¶ 6–7; Doc. 60-1, ¶ 3). The Ruhe Defendants further aver that they have never lived, conducted or solicited business, owned property, maintained bank accounts, received mail, or engaged in any other meaningful business contact within

Florida.  (Doc. 57, Exs. A, B; Doc. 60-1).  According to the Ruhe Defendants, their only contacts with Florida involved the original purchase of the subject engine and vacuum pump from AIG in 2005 and the subsequent sale of the same to Air-Tec in 2011.  (Doc. 57, ¶ 15; Doc. 60, ¶ 13).  Regarding the 2005 purchase, Eric Ruhe entered Florida for the sole purpose of helping his ailing father transport the engine and vacuum pump back to Ohio.  (Doc. 63-1, 51:25–52:17).  Regarding the 2011 sale to Air-Tec, Eric Ruhe responded to an Internet advertisement seeking similar airplane engines and negotiated a sale of the subject engine and vacuum pump over the course of two to four telephone conversations with Air-Tec.  (Doc. 60-1, ¶ 30; Doc. 63-2, 9:4–12:8).  Air-Tec then hired an Arizona trucking company to travel to Ohio, pick up the engine and vacuum pump from the Ruhe Defendants, and deliver the items to Air-Tec in Florida.  (Doc. 63-2, 9:4–11:10).  Plaintiffs do not deny that these appear to be the extent of the Ruhe Defendants' contacts with the State of Florida.

Based on these facts, the Court cannot find that the Ruhe Defendants engaged in "continuous and systematic business contact" with Florida.  Eric Ruhe's trip to Florida in 2005 can best be described as a random, isolated event, as his next contact with Florida did not occur for another six years.  The 2011 sale of the engine and vacuum pump to Air-Tec is similarly fortuitous because the Ruhe Defendants did not intentionally seek out a Florida resident to whom they would make the sale.  Instead, they merely responded to an Internet advertisement that happened to be published by a Florida resident.  Finally, it is undisputed that the Ruhe Defendants did not cause the engine and vacuum pump to enter Florida; they simply allowed a Florida resident (through a third party transporter) to come pick up the items he had purchased.  Consequently, the Ruhe Defendants have not

submitted themselves to Florida's general jurisdiction.  Failing to be reached by Florida's long-arm statute under either specific or general jurisdiction, the Court must grant the Ruhe Defendants' motions to dismiss.

### 3.    Service of Process

In addition to moving to dismiss for lack of personal jurisdiction, the Ruhe Defendants also move to quash service of process.  (Doc. 57; Doc. 60).  In order to perfect service of process on a non-resident, the plaintiff must meet two requirements.  First, "a complaint must allege that the nonresident defendant is engaged in business in the state and that the cause of action arises from these business activities."  *Pelycado Onroerend Goed B.V. v. Ruthenberg*, 635 So. 2d 1001, 1003 (Fla. Dist. Ct. App. 1994).  If a complaint fails to make these allegations, service of process must be quashed.  *See id.*  Second, service of process must be perfected through the means permitted by Florida statute. *See id.*

Here, the Ruhe Defendants state that service of process must be quashed because this Court lacks personal jurisdiction over them.  (Doc. 57, ¶¶ 39–48; Doc. 60, ¶¶ 34–43).  However, this is not a basis to quash service of process.  The Ruhe Defendants proceed under the misapprehension that if they contest Plaintiffs' jurisdictional allegations that the burden of persuasion shifts to Plaintiffs to prove that service of process was proper.  This is not the case; all that is required to perfect service of process is to make the proper allegations and to follow Florida's service rules. *Pelycado*, 635 So. 2d at 1003.  Indeed, Plaintiffs make the required allegations that the Ruhe Defendants engaged in business in Florida and that their claims for relief arise from these business activities.  (Doc. 20, ¶¶ 16(a), 22–33).  Moreover, the Ruhe Defendants

do not contend that service of process on them was in any way defective or contrary to Florida statute and the Court finds nothing in the declarations of service filed in this case to suggest as much. (*See* Docs. 47, 48, 49, 51). The fact that the Court now finds personal jurisdiction over the Ruhe Defendants lacking does not render service of process ineffective. Therefore, the Court will not quash service of process on the Ruhe Defendants.

### D.      Severance and Transfer

In their response in opposition to the Ruhe Defendants' motions to dismiss, Plaintiffs anticipate the possibility that this Court would not find personal jurisdiction over the Ruhe Defendants in Florida. To that end, Plaintiffs request that the Court sever the Ruhe Defendants from the action in this Court and transfer venue as to them to the United States District Court for the Northern District of Ohio, Toledo Division where personal jurisdiction over the Ruhe Defendants is certain. (Doc. 63, pp. 15–17). Plaintiffs appeal to the broad discretion of this Court to transfer actions to more convenient forums where justice so requires. (*Id.* at p. 15). Plaintiffs also note that, were this Court to dismiss the Ruhe Defendants entirely from this lawsuit based on lack of personal jurisdiction, Plaintiffs will be barred from seeking any relief against them due to the passing of the applicable statute of limitations in Ohio. (*Id.* at pp. 16–17). The Ruhe Defendants oppose severance and transfer, claiming that Plaintiffs have abused the court system by filing substantially similar lawsuits in Texas and Florida despite the obvious lack of personal jurisdiction over them in either forum. (Doc. 70, pp. 7–8). For that reason, the Ruhe Defendants contend that they should be dismissed from this lawsuit and that Plaintiffs should be compelled to file a new lawsuit in Ohio, along with the requisite filing fee, in order to pursue their claims

further.  (*Id.* at p. 8).

Severance of parties is governed by Federal Rule of Civil Procedure 20, which provides that a district court may sever a party to protect against "embarrassment, delay, expense, or other prejudice."  Fed. R. Civ. P. 20(b).  The Federal Rules of Civil Procedure similarly allow the severance of claims against a party.  Fed. R. Civ. P. 21. When addressing a question of severance, the court must determine "whether the interests of efficiency and judicial economy would be advanced by allowing the claims to travel together [or separately], and whether any party would be prejudiced if they did." *See AF Holdings, LLC v. Does 1–162*, No. 11-23036-Civ., 2012 WL 488217, at *2 (S.D. Fla. Feb. 14, 2012).  It is ultimately within the court's discretion to sever a party or claim to proceed separately from the main action.  *Dawley v. NF Energy Saving Corp. of Am.*, No. 6:07-cv-872-Orl-19DAB, 2008 WL 3889592, at *2 (M.D. Fla. Aug. 18, 2008).

Title 28 U.S.C. § 1631 governs the transfer of a case where a federal court finds that it lacks jurisdiction:

> Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631.  The purpose of this provision is "to enhance citizen access to justice." S. Rep. No. 97-275, at 1 (1981), *reprinted in* 1982 U.S.C.C.A.N. 11, 11.  As such, courts should transfer cases to encourage preservation of claims and deliberation of cases on their merits. *United States v. Am. River Transp., Inc.*, 150 F.R.D. 587, 592 (C.D. Ill. 1993). Importantly, district courts are strongly encouraged to transfer actions in cases such as

this one where personal jurisdiction is lacking over a defendant and there is a reasonable probability that the plaintiff's claim would be time-barred if it were renewed in another court.  *ITT Base Servs. V. Hickson*, 155 F.3d 1272, 1276 (11th Cir. 1998); *Peavy v. Klausner*, No. 8:11-CV-0508-T-27EAJ, 2011 WL 3841633, at *5 (M.D. Fla. Aug. 3, 2011).

Because this Court has found that it lacks personal jurisdiction over the Ruhe Defendants, the question must now be asked whether severance of the Ruhe Defendants and transfer to the Northern District of Ohio would be appropriate in light of the policies underlying the rules of severance and transfer.  There is no doubt that the burden on the interstate judicial system will be increased and judicial economy will be disserved by severance and transfer.  The events of this case would be litigated in three separate actions across three states: the pending state court action in Texas, this case in Florida, and the new case in the transferee district in Ohio.  However, this Court finds that this burden pales in comparison to the prejudice Plaintiffs would suffer were the Court to dismiss the Ruhe Defendants outright.  Plaintiffs' claims for relief would be time-barred by the applicable statute of limitations, effectively acting as an adjudication where no court has entertained Plaintiffs' claims on their merits.[6]  This is exactly the result 28 U.S.C. § 1631 seeks to avoid.  Accordingly, the interests of justice are best served by the severance of the Ruhe Defendants from this case and transfer to the Northern District of Ohio, Toledo Division for further proceedings as to them.

---

6.  The Court disagrees with the Ruhe Defendants' contention that Plaintiffs have abused the court system.  Plaintiffs' claims for relief appear viable on their face.  Moreover, Plaintiffs' assertions of personal jurisdiction over the Ruhe Defendants in both Texas and Florida were not patently unreasonable, as Plaintiffs' injuries accrued in Texas and a good deal of the allegedly tortious conduct attributable to the Ruhe Defendants reached Florida.

III.    **CONCLUSION**

For the aforementioned reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant AIG Aerospace Insurance Services, Inc. F/K/A Chartis Aerospace Insurance Services, Inc.'s Partially Unopposed Motion to Stay on Grounds of Abstention (Doc. 42) is **DENIED**.

2. Defendants Air-Tech, Inc.'s and Williamson Aircraft, Inc.'s Motion to Dismiss or, in the Alternative, to Stay Proceedings; and to Stay Discovery Pending Resolution of Said Motion (Doc. 53) is **DENIED**.

3. Defendants, Marilyn Ruhe, Bob Ruhe AG Service, Inc. and Ruhe Sales, Inc.'s Motion to Dismiss Complaint for Lack of Personal Jurisdiction and to Quash Service of Process with Memorandum of Law in Support (Doc. 57) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. Defendants' motion is **GRANTED** to the extent Defendants move to dismiss for lack of personal jurisdiction.

    b. Defendants' motion is **DENIED** to the extent Defendants move to quash service of process.

4. Defendant, Eric Ruhe's Motion to Dismiss Complaint for Lack of Personal Jurisdiction and to Quash Service of Process with Memorandum of Law in Support (Doc. 60) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. Defendant's motion is **GRANTED** to the extent Defendant moves to dismiss for lack of personal jurisdiction.

    b. Defendant's motion is **DENIED** to the extent Defendant moves to quash service of process.

5. Defendants Bob Ruhe AG Service, Inc., Ruhe Sales Inc., and Eric Ruhe are **SEVERED** from this action and venue is **TRANSFERRED** as to these Defendants only to the United States District Court for the Northern District of Ohio, Toledo Division for further proceedings.

6. The Clerk of Court is **DIRECTED** to mail a certified copy of this Order along with a copy of Plaintiffs' Amended Complaint (Doc. 20) to the Clerk of Court of the United States District Court for the Northern District of Ohio, Toledo Division.

7. The remaining parties in this Court shall file a Case Management Report within **fourteen (14) days** of this Order.

8. Defendants Air-Tec, Inc. and Williamson Aircraft, Inc. shall answer Plaintiffs' Amended Complaint within **fourteen (14) days** of this Order.

9. The Court's stay on discovery (Doc. 64) is **LIFTED**.

**DONE AND ORDERED** in Orlando, Florida on November 17, 2014.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record

25