IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Monty Clay, Individually and as
next friend of J.C.C. and J.M.C.,
and as Personal Representative of the
Estate of Amy Clay, et al.,

                Plaintiffs,                Case No. 3:14 CV 2537

       -vs-

                                      MEMORANDUM OPINION
                                      AND ORDER

AIG Aerospace Insurance Services, Inc., et al.,

                Defendants.

      Defendants have moved for summary judgement, to strike evidence, and for sanctions.  But before addressing the motions, I feel it necessary to comment regarding the briefs of the attorneys in this case.

      The "profession of an attorney at law is a highly honorable one."  *In re Chopak*, No. 3451, 1932 WL 2074, at *4 (C.C.P.A. May 23, 1932).  The attorneys in this case engaged in advocacy which went beyond their ethical duties.  The issues are not complex.  Rather than simply stating their respective positions, counsel wasted their time, and mine, finger-pointing and belittling the opposing side — time which would have been better spent succinctly addressing the issues at hand.  My comments are not to be construed as frustration with the parties.  *See Chandler v. Volunteers of Am., N. Ala., Inc.*, 598 F. App'x 655, 660 (11th Cir. 2015).  Rather, my criticism addresses the inordinate amount of time wasted on matters which are entirely irrelevant.[1]

---

[1] For example, the twenty-five pages expended on addressing the appropriateness of seeking summary judgment as a matter of law based upon plaintiffs' own factual allegations was completely unnecessary.  (Doc. Nos. 96, 97).  The issue in question could and was properly addressed in subsequent filings.  (Doc. Nos. 103, 105).  Although the subsequent

## I.  FACTS

This case is based upon the tragic deaths of Dale Leighroy Phillips, Jr. and Amy Clay in an airplane crash.  Plaintiffs allege defects in a Piper PA-24-250 aircraft which crashed near Abilene, Texas, on February 20, 2012.  Plaintiffs specifically contend the crash was a result of the in-flight failure of a 215CC vacuum pump (Serial No. 1706).

Although Plaintiffs also refer to the engine used in the plane (Serial No. L-20394-40A), the engine appears irrelevant to the actual cause of the crash, nor was the engine alleged to have failed during the flight.  Rather, Plaintiffs allege the vacuum pump failed, causing the crash.  (Doc. No. 1, p. 6, ¶ 20).

Plaintiffs state the vacuum pump and engine were first installed on another aircraft, identified as N33033, in late 1999 or early 2000.  The N33033 was a 1975 Piper Pa-23-260 aircraft, having been owned by multiple entities over the previous twenty-five years.  At the time of the installation of the vacuum pump and engine, the N3303 was owned by Presnall Cage.  There is no evidence Mr. Cage engaged in a business of using the vacuum pump and engine as a component to create another product.

Both components were sold to J.A.G. Components, Inc. in 2003.  Then, in 2005, AIG and Chartis, the insurers of N33033, sold the vacuum pump and engine as salvage because the plane had been damaged by Hurricane Wilma.

Robert G. Ruhe was the founder of Defendants AG Service and Ruhe Sales.  He was also the father of Defendant Eric Ruhe.  After Robert Ruhe's death in 2008, Eric Ruhe was an owner and employee of AG Service.

---

filings were appropriate, the rhetoric was not.  (Doc. No. 103, pp. 7–8, 10–15; Doc. No. 105, pp. 13, 15).  Such conduct is not the custom of the local bench and bar.

AG Service and Ruhe Sales are domestic limited liability companies in Ohio with business offices exclusively in Leipsic, Ohio.  AG Service is an agricultural spraying operation which supplies aerial application of fertilizers, pesticides, and fungicides on crops.  Ruhe Sales is a business which owned aircraft from time to time and is the parent company of AG Service.

The vacuum pump and engine were sold in 2011 to Air-Tec, Inc., a Florida company.  Air-Tec made the arrangements for shipping by hiring a trucking company to travel to Ohio to retrieve the parts.  The United States District Court for the Middle District of Florida has found Defendants' sale to Air-Tec did not give Florida jurisdiction over the Ruhe Defendants.  (Doc. No. 75, pp. 19–20).

Plaintiffs alleged the sale of the parts to Air-Tec placed the parts into the "stream of commerce."  (Doc No. 1, p. 11, ¶ 29; Doc. No. 20, p. 11, ¶ 28).  Air-Tec then sold the vacuum pump and engine to decedent Phillips in Florida.  The vacuum pump and engine were then installed in the Piper PA-24-250 aircraft.  The vacuum pump and engine, plaintiffs assert, were installed in the used N33033 aircraft more than ten years before the fatal crash on February 20, 2012.

In 2013, Plaintiffs filed a law suit against various parties, including some of the Ruhe Defendants in this case, in the state district court of Wood County, Texas.  The Ruhe Defendants successfully challenged the court's jurisdiction in that proceeding, convincing the Texas court to dismiss Plaintiffs' claims against the Ruhe Defendants for lack of personal jurisdiction.

Plaintiffs then filed their claims against the Ruhe Defendants and others in the United States District Court for the Middle District of Florida.  The Florida court subsequently dismissed the claims against the Ruhe Defendants for lack of in personam jurisdiction.  The Florida court severed the claims against the Ruhe Defendants, transferring those claims to this Court.

## II. STANDARD OF REVIEW

Summary judgment is proper where "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting a genuine issue of material fact must support the argument either by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). A court views the facts in the record and reasonable inferences which can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). A court does not weigh the evidence or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

The party requesting summary judgment bears an initial burden of demonstrating no genuine issue of material fact exists, which the party must discharge by producing evidence to demonstrate the absence of a genuine issue of material fact or "by showing . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25 (1986) (internal quotation marks omitted). If the moving party satisfies this burden, the nonmoving party "may not rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren,* 578 F.3d 351, 374 (6th Cir. 2009) (citing Rule 56 and *Matsushita,* 475 U.S. at 586). The party opposing the summary judgment motion must present sufficient probative evidence supporting its claim that disputes over material facts remain; evidence which is "merely colorable" or "not significantly probative" is insufficient. *Anderson,* 477 U.S. at 248–52.

4

### III.  CHOICE-OF-LAW

The first issue which must be addressed is a choice-of-law question.  Defendants contend Ohio law applies to this case.  If the ten-year statute of repose for product liability claims under Ohio Rev. Code § 2125.02(D)(2)(a) is applicable, Defendants would be entitled to summary judgment.  In contrast, Plaintiffs assert Texas law applies, which has a fifteen-year statute of repose.  Tex. Civ. Prac. & Rem. Code § 16.012(b).  If Texas law applies, Plaintiffs' action would not be barred.

In diversity cases, I must apply the choice-of-law rules of the state in which I sit.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 501 (6th Cir. 2003).  The Supreme Court of Ohio has adopted the choice-of-law approach set forth in the Restatement (Second) of the Law of Conflicts § 146 (1971).  *Morgan v. Biro Mfg. Co.*, 474 N.E.2d 286, 289 (Ohio 1984); *see also Wahl v. Gen. Elec. Co.*, 786 F.3d 491, 499 (6th Cir. 2015).  The Restatement provides:

> In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to a particular issue, some other state has a more significant relations . . . to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of the Law of Conflicts § 146 (1971); *see also Wahl*, 786 F.3d at 499.

Ohio applies the following factors in determining the "significant relationship" requirement: 1) the place where the injury occurred; 2) the place were the conduct causing the injury occurred; 3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; 4) the place where the relationship of the parties is located; and 5) any factor which the court may deem relevant to the litigation.  *Morgan*, 474 N.E.2d at 289 (citing Restatement (Second) of the Law of Conflicts § 145 (1971)); *see also Wahl*, 786 F.3d at 499.  These factors are to be evaluated "according to their relative importance to the case."  *Morgan*, 474 N.E.2d at 289.  Each specific issue

is to receive separate consideration if one would be resolved differently under the local law rules of different interested states. Restatement (Second) of the Law of Conflicts § 145, cmt. d (1971).

A. *Place of Injury*

Phillips purchased the vacuum pump and engine in Florida. The parts were shipped and placed in the airplane in Abilene, Texas. Phillips flew the airplane in Texas where it crashed. Defendants admit Texas has an interest in compensating the individuals injured within the state.

Ohio has abandoned the doctrine of automatic application of the law of the place of injury. *Morgan*, 474 N.E.2d at 289; *Moats v. Metro. Bank of Lima*, 319 N.E.2d 603, 604 (Ohio 1974). In *Moats*, the decedents were residents of Ohio, the aircraft was owned by an Ohio corporation, and the estates of the deceased were in Ohio. *Moats*, 319 N.E.2d at 604. The crash occurred in Pennsylvania. *Id.* The Supreme Court of Ohio found the only significant interest Pennsylvania had in the case was the location of the accident. *Id.* The court found this factor was insufficient to outweigh the other considerations involved. *Id.*

In this case, Phillips chose to fly the aircraft to a location entirely of his choosing. The Texas location was a unilateral act of selection by Phillips, outside the control of the Defendants. The absence of a connection to Texas is why the Texas state court dismissed the Ruhe Defendants for lack of in personam jurisdiction.

The Restatement explains where a defendant had little or no reason to foresee his act would result in an injury in a particular state, this factor will mitigate against selection of the state of injury as the state of applicable law. Restatement (Second) of the Law of Conflicts § 145, cmt. e (1971). Defendants sold the parts to Air-Tec, a Florida entity. Air-Tec made all the arrangements for shipping the parts out of Ohio by hiring a trucking company to travel to Ohio to transport the parts on Air-Tec's behalf. The district court in Florida has previously found the sale of the parts to Air-

Tec did not subject the Defendants to Florida's jurisdiction. There was no expectations by the Defendants the parts would be used or would enter the State of Texas.

### B. Place of Conduct Causing Injury

The Restatement provides "when the place of injury . . . is fortuitous and, with respect to the particular issue, bears little relation to the occurrence and the parties, the place where the defendant's conduct occurred will usually be given particular weight in determining the state of the applicable law." Restatement (Second) of the Law of Conflicts § 145, cmt. e (1971). "'In product liability claims, the primary interest of a state is to deter the sale and/or manufacture of negligently or defectively manufactured goods to that state's citizens.'" *Nationwide Mut. Fire Ins. Co. v. Gen. Motors Corp.*, 415 F. Supp. 2d 769, 775 (N.D. Ohio 2006) (quoting *Cheatham v. Thurston Motor Lines*, 654 F. Supp. 211, 214 (S.D. Ohio 1986)). "'Because the central event upon which a products liability claim is normally based is the sale of the goods, injured parties would expect that the law of the place of sale should govern with respect to injuries caused by those defects.'" *Id.* (quoting *Cheatham*, 654 F. Supp. at 214). Here, the sale occurred in Ohio. Under *Nathionwide* and *Cheatham*, the parties would expect Ohio law to govern. *Id.*

### C. Domicile, Residence, Place of Incorporation, Place of Business

This factor is of little assistance because Ohio, Florida, and Texas all have some connection to this transaction. Ohio has connection to the case by the residence of the Defendants and the location of the sale. Florida is connected because the vacuum pump was sold to Air–Tec, a Florida corporation. Texas's connection is a result of the location of the accident, some Plaintiffs, and decedents.

### D. Location of Relationship Between Parties

Regarding the relationship between the parties, there is no privity of contract between the

7

Plaintiffs and Defendants.  The Defendants did not manufacture the parts, nor did they sell the parts directly to decedent Phillips.  Plaintiffs' claim is based on Defendants' sale of the parts to Air-Tec. Plaintiffs' specifically claim the Defendants failed to warn or otherwise inform Air-Tec of the allegedly defective nature of the vacuum pump and engine.  Plaintiffs' allegations concern the relationship between Defendants and Air-Tec, a relationship which has already been adjudicated in Florida as having been centered in Ohio.

*E.  Principles to Be Considered*

Restatement (Second) of the Law of Conflicts § 6 provides several general principles for consideration when conducting the choice-of-law analysis.

1.  Protection of justified expectations

The Restatement provides "it would be unfair and improper to hold a person liable under the local law of one state when he had justifiably molded his conduct to conform to the requirements of another state."  Restatement (Second) of the Law of Conflicts § 6, cmt. g (1971). Here, Air-Tec was required to hire a trucking company to transport the parts from Ohio to Florida. The transaction occurred in Ohio and Defendants would expect Ohio's ten-year statute of repose, which had already expired by the time the sale occurred, to control.

In addition, the Defendants would have no expectations Texas law would be remotely applicable to the sale.  This was a single sale of parts in Ohio from Ohio Defendants to a Florida entity.  Thus, Defendants had no expectations Texas law, with its fifteen-year statute of repose, would apply to the sale.

2.  Policies underlying the particular field of law

Under this factor, a court applies the local law of the "state which will best achieve the basic policy, or policies, underlying the particular field of law involved."  Restatement (Second) of the Law

8

of Conflicts § 6, cmt. h (1971).  "Statutes of repose effect a legislative judgment that a defendant should be free from liability after the legislatively determined period of time."  *CTS Corp. v. Waldburger*, 134 S. Ct. 2175, 2183 (2014) (internal quotation marks and citation omitted).  These statutes "reflect legislative decisions that as a matter of policy there should be a specific time beyond which a defendant should no longer be subjected to protracted liability.  Like a discharge in bankruptcy, a statute of repose can be said to provide a fresh start or freedom from liability."  *Id.* (internal quotation marks and citation omitted).

The purpose of Ohio's statute of repose is to protect defendants from "unreasonable exposure to liability."  *Jones v. Walker Mfg. Co.*, No. 97301, 2012 WL 1142889, at *1 (Ohio Ct. App. Apr. 5, 2012).  Thus, the intent of the statute is a legislatively determined right to protection from liability.

The Restatement requires weight be given to Ohio's interest in applying its statute of repose.  "A rule which exempts the actor for liability from harmful conduct is entitled to the same consideration in the choice-of-law process as is a rule which imposes liability."  Restatement (Second) of the Law of Conflicts § 145, cmt. c (1971).  "[T]he local law of the state where the parties are domiciled . . . may be applied to determine whether one party is immune from tort liability to the other . . . ."  Restatement (Second) of the Law of Conflicts § 6, cmt. d (1971).

### F. *Constitutional Considerations*

There are also constitutional requirements which must be considered.  When considering fairness in a constitutional context, an important element is the expectation of the parties.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 822 (1985).  In this case, Defendants had no relationship with Texas.  There were no expectations by the Defendants the parts would be used in Texas or the laws of Texas would impact their sale to Air-Tec.

Further, a Texas court has already found the Defendants had insufficient contacts with Texas to subject the Defendants to the state's jurisdiction.  Although personal jurisdiction and choice-of-law doctrines are different, the existence of personal jurisdiction is a significant factor in determining whether the application of a state's substantive law is constitutional.  *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 317 n.23 (1981).

The Supreme Court has recognized the examination of a state's contacts may result in divergent conclusions for jurisdiction and choice-of-law purposes.  *See Kulko v. California Superior Court*, 436 U.S. 84, 98 (1978) (no jurisdiction in California, but California law "arguably might" apply); *Shaffer v. Heitner*, 433 U.S. 186, 215 (1977) (no jurisdiction in Delaware, although Delaware interest "may support the application of Delaware law").  Nevertheless, "both inquiries 'are often closely related and to a substantial degree depend upon similar considerations.'"  *Shaffer*, 433 U.S. at 224–225 (Brennan, J., concurring in part and dissenting in part).  Jurisdiction in Ohio is unquestionably a factor in assessing the constitutionality of Ohio's choice of its own substantive law.  *Id.* at 225 ("the decision that it is fair to bind a defendant by a State's laws and rules should prove to be highly relevant to the fairness of permitting that same State to accept jurisdiction for adjudicating the controversy").

## G.  Discussion

In evaluating the elements in resolving choice-of-law issues as set forth in the Restatement (Second) of the Law of Conflicts, the decisions of the state courts of Ohio, and the constitutional requirements discussed by the Supreme Court, I conclude Ohio law is applicable to this case.  Although the injury occurred in Texas, Ohio has a more significant relationship to the transaction in question than Texas, requiring application of Ohio's statute of repose.

10

The airplane parts were in Ohio at the time of the sale and had been located in the state for a number of years prior to the sale.  The Defendants were, and still are, located in Ohio.  The parts were sold to Air-Tec, a Florida entity, which sent a transportation company to Ohio to remove the parts from the state.  The United States District Court in Florida has ruled the transaction was subject to the jurisdiction of Ohio.  There is no privity of contract between the Defendants and the Plaintiffs, the sale of the parts having been conducted between Air-Tec and decedent Phillips.  Defendants had no contacts with Texas and had no expectations they would be subject to Texas law.  Given these factors, I find the evidence favors the application of Ohio law in this case.

## IV.  OHIO'S DOCTRINE OF REPOSE

Under § 2125.02(D)(2)(a),

no cause of action for wrongful death involving a product liability claim shall accrue against the manufacturer or supplier of a product later than ten years from the date that the product was delivered to its first purchaser or first lessee who was not engaged in a business in which the product was used as a component in the production, construction, creation, assembly, or rebuilding of another product.

Plaintiffs allege the vacuum pump and engine were delivered to the first purchaser in 1999 or 2000.  The accident occurred in February 2012.  Therefore, Plaintiffs' complaint is barred by the ten year statute of limitations of § 2125.02(D)(2)(a).

There is no evidence the Defendants engaged in a business wherein the parts were used as a component in the production, construction, creation, assembly, or rebuilding of another product.  Because this exception to the ten-year statute of limitations was neither alleged nor proven, this statutory exception to the ten-year limitations period is not applicable.

Plaintiffs assert even if Ohio law applies, the repose period began to run in October 2005 when a hurricane created an intervening defect in the parts, citing *Groch v. Gen. Motors Corp.*, 883 N.E.2d 377 (Ohio 2008), and *Jones v. Walker Mfg. Co.*, No. 97301, 2012 WL 1142889 (Ohio Ct. App.

Apr. 5, 2012).  The argument is without merit.

Neither *Groch* nor *Jones* support Plaintiffs' argument.  *Jones* states the statute of repose is inapplicable where a "supplier rebuilds or reconditions a product beyond its intended useful life." *Jones*, 2012 WL 1142889, at *2.  There is no evidence the Defendants rebuilt, reconditioned, or altered the parts in any manner.  To the contrary, Plaintiffs alleged the Defendants did nothing in relation to the parts besides placing them in a box where they remained for approximately five years. This conduct does not constitute rebuilding, reconditioning, or altering of the vacuum pump and engine.  Further, the court noted performing maintenance on a product does not constitute rebuilding or reconditioning.  *Id.* at *3.  Because the purchaser of a ten-year old used product has no expectation the product would perform as new, *Jones* found the statute of repose barred the cause of action.  *Id.*

In *Groch*, the court stated "[a]lthough R.C. 2305.10(c) may prevent some suits against product manufacturers, in many situations, an injured party may be able to seek recovery against other parties.  For example, if an employer modifies a machine after it is acquired, the employer could be liable for the consequences of a negligent alteration."  *Groch*, 883 N.E.2d at 404.  In this instance, Plaintiffs do not allege the Defendants modified the parts.  They only argue Hurricane Wilma altered the vacuum pump and engine.  Because there is no allegation the Defendants altered the vacuum pump and engine, *Jones* and *Groch* are not applicable to this case.

Plaintiffs also assert a fraud exception prevents the application of the statute of repose. Plaintiffs do not allege the Defendants engaged in fraud as required by Federal Rule of Civil Procedure 9(b).  Under Rule 9(b), a plaintiff must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud."  *Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th

Cir. 2010) (internal quotation marks and citation omitted). The rule requires the circumstances of the fraud, and not the evidence of the case, be pleaded with particularity. *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 n.9 (6th Cir. 1988). Rule 9(b) may be relaxed when there has been a lack of discovery and the information needed for a plaintiff to achieve particularity is held exclusively by the opposing party. *Id.* The main purpose behind Rule 9(b) is to provide the defendant with notice of the plaintiff's claim so the defendant may prepare an informed responsive pleading. *Id.* at 679; *see also Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993). In the instant case, the Plaintiffs have failed to satisfy the pleading requirements of Rule 9(b).

Further, Ohio law does not permit claims for fraudulent misrepresentation to a third-party. As the court stated in *McWreath v. Cortland Bank*, No. 2010-T-0023, 2012 WL 2522933, at *11 (Ohio Ct. App. June 29, 2012):

> Under Ohio law, a claim in fraud cannot be predicated upon statements or representations made to a third party; i.e., the communication must have been directly with the person who has brought the action. *Edwards v. Owen*, 15 Ohio 500 (1846). Despite the fact that the *Edwards* precedent was issued more than one hundred years ago, our review of the subsequent case law shows that the Supreme Court of Ohio has never reconsidered this specific point. Therefore, for this reason alone, any alleged statement not made directly to appellant cannot form the basis of a viable fraud claim.

Defendants had no direct communications with the Plaintiffs. Therefore, under *McWreath*, the Plaintiffs may not bring a cause of action for fraud against the Defendants. Because no claim of fraud has been established, the statute of repose is applicable and bars Plaintiffs' cause of action.

In their sur-reply, the Plaintiffs abandoned their prior position regarding the statute of repose and assert the statute is not even applicable to the case. Plaintiffs state the Defendants are not manufacturers or suppliers as defined by the statute and no product liability claim is pending. Not only is this assertion contrary to Plaintiffs' prior position, it is contrary to Ohio law.

13

Under the statute, a "supplier" is defined as a person "in the course of a business conducted for the purpose, sells, distributes . . . or otherwise participates in the placing of a product in the stream of commerce." Ohio Rev. Code § 2307.71(A)(15)(i). Plaintiffs alleged the Defendants were "in the business of purchasing, marketing, selling and distributing aircraft parts, including but not limited to . . . [the engine] and . . . [the vacuum pump]" "through the stream of commerce." Further, a "product liability claim" is based on the "claim or cause of action that is asserted in a civil action . . . ." Ohio Rev. Code § 2307.71(A)(13).

A product liability claim includes any claim relating to the marketing of the product, lack of warnings or instructions associated with the product, or any failure of the product to conform to any relevant representation or warranty. Ohio Rev. Code § 2307.71(A)(13). This is what Plaintiffs asserted wherein they alleged negligence, strict liability, and breach of warranty relating to the marketing, distribution, failure to warn, and breach of warranty as to the vacuum pump and engine. Ohio's product liability statute of repose applies and bars Plaintiffs' cause of action against the Defendants.

## V. MOTION FOR SANCTIONS AND MOTION TO STRIKE

Defendants have moved to strike certain evidence supplied by the Plaintiffs and have requested sanctions as a result of the inclusion of this evidence in the record. The evidence in question concerns Robert Ruhe's federal criminal convictions in 1997. Robert Ruhe died in 2008, well before the sale of the vacuum pump and engine in 2011. Robert Ruhe is not a party to this action.

Plaintiffs contend the business practices of Robert Ruhe in the 1990s are relevant and admissible under the Federal Rules of Evidence. They argue Robert Ruhe's actions of two decades past show the present Defendants intended to defraud the Plaintiffs. They also contend I may take

14

judicial notice of other court documents relating to Robert Ruhe's criminal case.

A district court may not admit evidence that is irrelevant to the proceeding. Fed. R. Evid. 402; *United States v. Mackey*, 249 F. App'x 420, 426 (6th Cir. 2007). "The Federal Rules of Evidence set a low bar for relevance." *Cambio Health Solutions, LLC v. Reardon*, 234 Fed. App'x 331, 338 (6th Cir. 2007). "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

The proffered evidence and arguments regarding Robert Ruhe are totally irrelevant to the issues in this case and are inadmissible. The proffered evidence regarding a non-party, who died years before the sale in question occurred, who had criminal proceedings decades ago, fails to show more probably than not the Defendants intended to defraud the Plaintiffs. *See* Fed. R. Evid. 401. Defendants' motion to strike is granted and all evidence and references regarding Robert Ruhe's business actions and his prior convictions are struck from the record.

Defendants have also requested sanctions against the Plaintiffs because Defendants were required to file their motion to strike regarding the inadmissible materials. A district court may exercise its inherent power to impose sanctions upon a finding that an attorney "willfully abuse[d] judicial processes" by conduct "tantamount to bad faith" after "fair notice and an opportunity for a hearing on the record." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764–67 (1980). The Supreme Court has explicitly required that sanctions are conditioned on the trial court's making a specific finding of bad faith: "the trial court did not make a specific finding as to whether counsel's conduct in this case constituted or was tantamount to bad faith, a finding that would have to precede any sanction under the court's inherent powers." *Id.* at 767; *Eaton Aerospace, L.L.C. v. SL Montevideo Technology, Inc.*, 129 F. App'x 146, 153–54 (6th Cir. 2005). I find that Plaintiffs have not satisfied this

15

bad faith standard. Therefore, the motion is denied.

## VI. CONCLUSION

Accordingly, Defendants' motion for summary judgment and motion to strike are granted.

Their motion for sanctions is denied.

So Ordered.

    s/ Jeffrey J. Helmick
United States District Judge
